USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 1, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ANTHONY CUSAMANO, :
:
                  Petitioner, :    06 Civ. 6047   (PAC) (THK)
:
    - against - :    <u>ORDER</u>
:
JOHN J. DONELLI, :
:
:
                  Respondent. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

Petitioner Anthony Cusamano seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction for burglary and other related offenses. On December 19, 2007, Magistrate Judge Theodore H. Katz issued a Report & Recommendation ("R&R") recommending that Cusamano's petition be dismissed with prejudice. Cusamano timely filed objections. Upon review of the R&R and the objections, the Court adopts Magistrate Judge Katz's recommendations set forth in his thorough and complete report of 56 pages and denies Cusamano's petition.

## BACKGROUND

**I.    Facts**[1]

On November 7, 2003, Cusamano was found guilty of third-degree burglary, third-degree robbery, fifth-degree criminal possession of stolen property, and possession of burglar's tools. Cusamano was alleged to have committed these crimes on July 15, 2003 at an Eddie Bauer store located at 1172 Third Avenue in Manhattan. Approximately 5-1/2 years earlier, in February 1998, Cusamano had visited the same

---

[1] The facts in this section are taken from the R&R.

1

store and was caught taking several items of merchandise. He was not prosecuted, however. Instead, he signed a voluntary trespass notice which provided that he would never return to the store. When he did so in July, 2003, and took other merchandise, he was arrested, prosecuted and convicted after a jury trial at which he appeared pro se. The chief witness against Cusamano was an Eddie Bauer employee, Fatah Bensalem, a loss prevention manager. Bensalem had Cusamano sign the voluntary trespass agreement in February, 1998 and he was also the chief witness to Cusamano's conduct in July 2003. On March 10, 2004, Cusamano was sentenced to concurrent indeterminate terms of three and one-half to seven years' imprisonment for the third-degree burglary and robbery convictions. Those sentences were to run concurrent to his determinate one-year prison terms for the fifth-degree criminal possession of stolen property and possession of burglar's tools misdemeanor convictions. Proceeding pro se, Cusamano appealed to the Appellate Division, First Department, which on March 9, 2005, unanimously affirmed his convictions. People v. Cusamano, 22 A.D.3d 427 (App. Div. 1st Dep't 2006). Cusamano sought leave to appeal to the New York Court of Appeals, but his application was denied on January 6, 2006. People v. Cusamano, 6 N.Y.3d 775 (2006).

Cusamano then filed his present petition for a writ of habeas corpus. Respondent John J. Donelli moved to dismiss Cusamano's petition and argued that it lacked merit.

## II.   Magistrate Judge Katz's R&R

Cusamano's habeas petition repeats the same eleven separate grounds that were the basis for his appeal. Cusamano asserts that: (1) his burglary prosecution did not commence within the applicable limitations period; (2) the pretrial judge should not have denied his motion to dismiss the felony complaint; (3) the felony complaint contained

pre-indictment deficiencies; (4) the trial court failed to perform an adequate pro se inquiry; (5) the trial court impermissibly limited his ability to cross-examine the state's main witness against him; (6) the prosecution engaged in prosecutorial misconduct during the proceedings; (7) the prosecution's evidence constructively amended the indictment; (8) both the pretrial judge and the trial judge demonstrated bias against him; (9) he was denied his right to discovery of exculpatory evidence; (10) the conduct of his arraignment counsel amounted to ineffectiveness of counsel; and (11) the "multitudinous errors" of the prosecution and the courts violated his right to a fair trial. (See R&R at 2.) Magistrate Judge Katz found that all of Cusamano's claims were without merit. Cusamano then filed objections to the R&R on January 20, 2008.[2]

## DISCUSSION

### I.   Standard of Review for a Report and Recommendation

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the magistrate's recommendations, the court is required to review the contested portions de novo. Pizarro v. Bartlett, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). The Court, however, "may adopt those portions of the R&R to which no objections have been made and are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).

### II.   Consideration of Cusamano's Objections

Cusamano raises thirteen objections to the R&R: (1) his burglary prosecution was untimely because it was not brought within the applicable limitations period (Objections

---

[2] The long delay in reviewing the R&R is attributable solely to the Court, which misplaced the file in this matter. While the delay is regrettable, Petitioner suffered no injury because his petition is obviously without merit, and Magistrate Judge Katz's opinion is entirely correct.

to Report and Recommendation of U.S. Magistrate Judge Katz ("Objections") at 1); (2) his motions to dismiss his burglary and robbery charges should be granted (Objections at 3); (3) the felony complaint was defective (Objections at 4); (4) the trial court failed "to conduct the requisite pro se inquiry" (Objections at 5); (5) the trial court imposed "undue limitations" on his ability to cross-examine the witnesses against him (Objections at 7); (6) the prosecution engaged in misconduct that deprived him of a fair trial (Objections at 14); (7) the prosecutor constructively amended the indictment because the prosecutor introduced evidence at trial that differed from the evidence that was presented to the grand jury (Objections at 23); (8) the pre-trial and trial courts improperly denied his discovery requests (Objections at 26); (9) his arraignment attorney's failure to challenge the validity of the 1998 trespass agreement amounted to ineffective assistance of counsel (Objections at 28); (10) both the pretrial and trial judges' bias against him mandate reversal (Objections at 29–33); (11) the multitude of errors that the lower courts and the prosecution committed violated his right to fair proceedings (Objections at 33–34)[3]; (12) Magistrate Judge Katz failed to consider each of his claims on an individual basis (Objections at 35)[4]; and (13) as evidenced by his factual findings and recommendations in the R&R, Magistrate Judge Katz acted as Cusamano's adversary when he recommended that Cusamano's request for habeas relief should be denied (Objections at 39).[5]

---

[3] The "multitude of errors" are merely restatements of the same objections that the Court will address below. Because the Court finds that the claims discussed below lack merit this objection is also meritless.

[4] Petitioner objects to the standard that Magistrate Judge Katz used to review his claims. The Court is required to review this objection de novo. See Pizarro, 776 F. Supp. at 817. Upon a de novo review the Court finds each of Petitioner's claims to be meritless. See infra.

[5] This objection is conclusory and wholly speculative and is therefore without merit.

### i. Untimely Prosecution

In New York State, a prosecution for burglary in the third degree must be commenced within five years after the burglary is committed. See N.Y. CRIM. PROC. L. § 30.10(2)(b) (McKinney 2007). Cusamano's claim that the three-year limitations period under N.Y.C.P.L.R. § 214 should apply here is misplaced because the statute only applies in civil cases. Cusamano was arrested on July 15, 2003, on a burglary charge and the prosecution against him for that charge commenced within months, and is obviously timely. Cusamano's real attack is on the trespass agreement which was signed 5-1/2 years before he committed his crime. Cusamano was not indicted for the 1998 incident, however; and the agreement was used only to establish that his entry into the store in 2003 was unlawful. The 1998 agreement does not mark the accrual for statute of limitations purposes.

### ii. Motion to Dismiss Burglary and Robbery Charges

In his objections to Magistrate Judge Katz's R&R, Cusamano argues that the robbery charge should be dismissed on the grounds that he did not receive adequate notice because the charge was not included in the felony complaint before it was submitted to the grand jury. (Objections at 4.). Errors in the state grand jury proceedings, however, are not cognizable on habeas review. "A federal habeas court does not sit to correct a misapplication of state law unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Sptizer, 297 F.3d 172, 182 (2d Cir. 2002) (citing 28 U.S.C. § 2254, and Estelle v. Mcguire, 502 U.S. 62, 67–68 (1991)). Since there "is no federal constitutional right to indictment by a grand jury" in a state prosecution, a misapplication of state law in a grand jury proceeding does not violate the

Constitution, laws, or treaties of the United States.  See Hurtado v. California, 110 U.S. 516 (1884).  Cusamano's claim that he received inadequate notice about the robbery charge is not cognizable on habeas review.  Pitts v. People, No. 00 Civ. 5505 (GEL), 2001 WL 410077, at *1 (S.D.N.Y. April 23, 2001) (finding that defendant's claim that he was not given prior notice that the prosecution planned to seek an indictment on charges other than the original charges in the summons was not cognizable and any error was harmless beyond a reasonable doubt).

### iii. Alleged Defective Felony Complaint

Cusamano argues that a literal reading of the complaint would not provide probable cause that he, rather than the complainant, committed the crimes alleged in the complaint. (Objections at 4.).  Cusamano's argument is based on the fact that the criminal complaint mistakenly used the term "informant" rather than "defendant" in two instances. (See R&R at 19.)  Even if a complaint does not establish probable cause, however, the prosecution reserves the right to charge the defendant with the same offense by indictment.  See Gerstein v. Pugh, 420 U.S. 103, 108 (1975).  Under New York law, a grand jury indictment renders any alleged pre-indictment deficiencies irrelevant.  See People v. Hart, 25 A.D.3d 815, 816 (App. Div. 3rd Dep't 2006) ("The indictment by the grand jury superseded the criminal court information and the proceedings before the local criminal court; the grand jury had the authority to indict regardless of any alleged defects in the earlier accusatory instrument or proceedings."); People v. Smith, 304 A.D.2d 677, 678 (App. Div. 2nd Dep't 2003) ("[E]ven if the felony complaint was defective, it was superseded by a valid indictment, rendering any claim regarding a purported defect in the

felony complaint academic."). The indictment by the grand jury rendered any deficiency in the criminal complaint moot.

Cusamano also argues that the failure of a judge to make a preliminary probable cause determination regarding the complaint resulted in his unlawful detention. "Although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." Gerstein v. Pugh et. al., 420 U.S. 103, 119. Cusamano was convicted of burglary. Therefore, even if the judge failed to make a probable cause determination regarding the complaint, the conviction may not be vacated.

### iv. Alleged Failure of Trial Court to Conduct a Pro Se Inquiry

This is perhaps Cusamano's most brazen argument. He claims he did not waive his right to counsel at an extensive pre-trial colloquy and that the trial court failed to conduct the requisite pro se inquiry prior to the commencement of trial. A criminal defendant is entitled to proceed pro se, but the trial court must first determine "that any waiver of the right to counsel be knowing, voluntary, and intelligent." Iowa v. Tovar, 541 U.S. 77, 88 (2004). The defendant should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing. Id. at 89. Warnings of the pitfalls of the proceeding to trial without counsel must be rigorously applied. Id. A reviewing court may look to the whole record, not simply to the waiver colloquy, in order to determine if a defendant effectively waived counsel. People v. Providence, 2 N.Y.3d 579, 583 (2004)(holding that defendant effectively waived the right to counsel where the trial judge repeatedly and adequately

warned him of the dangers of self-representation, the court file contained defendant's pedigree information, and the firsthand experience with the defendant gave the trial judge a general sense of defendant's age, literacy and familiarity with the criminal justice system). The pre-trial judge informed Cusamano that in proceeding pro se he surrenders valuable rights and benefits that he would otherwise have if he was represented by counsel, such as the right to "have somebody who is experienced, who does understand intimately these rules, speak for you, address a jury for you, speak to the Court for you, make proper argument for you and to cast it all in the terms of the law." (Pre-Trial Hearings Transcript, dated August 14, 2003 at 6). Further, the trial judge questioned the Defendant about his previous pro se trial experience, and pointed out that Cusamano was an unsuccessful pro se litigant, resulting in two prior convictions. Id. at 4. Cusamano insisted that he was familiar with criminal procedure law and the charges against him and expressed his desire to proceed pro se. Id. Cusamano's waiver of his right to counsel was knowing, voluntary, and intelligent. Cusamano was well aware of the dangers of self-representation, based on his own prior experience, which was specifically called to his attention. In light of this record, Cusamano's argument that the trial court should have warned him again is meritless. Even after trial, Cusamano insisted on appealing pro se. It is clear that Cusamano never abandoned his request to proceed pro se. See Williams v. Bartlett, 44 F.3d 95, 100–01 (2d Cir. 1994).

### v. Limits on Cross-Examination

The dangers of appearing pro se are vividly displayed when Cusamano confronts the Rules of Evidence. He contends he laid the proper foundation to admit the Loss Prevention Incident Report ("L.P.I.R") (that is the voluntary trespass agreement of

8

February, 1998) as a business record.  Even if the trial court's ruling excluding the report was erroneous, its exclusion did not violate the Confrontation Clause.  The record demonstrates that notwithstanding the limits placed on Cusamano's cross-examination, Cusamano was able to use the L.P.I.R. to suggest that the Eddie Bauer employee, Bensalem, made prior inconsistent statements.  (Transcript 11/05/03 at 84–85).[6] Cusamano cross-examined Bensalem in an effort to expose inconsistencies between what the witness stated in the L.P.I.R. and his trial testimony.  The jury was free to judge the witness's credibility based upon that cross-examination. (Transcript 11/05/03 at 84).  The limits placed on receiving the report in evidence did not deprive Cusamano of a fair trial.  See Collins v. Scully, 755 F.2d 16,18 (2d Cir. 1985) (citing United States v. Agurs, 427 U.S. 97, 112 (1976) ("[T]he test for determining whether the ruling denied the defendant a fair trial is whether it would have created 'a reasonable doubt that did not otherwise exist.'").

### vi.  Prosecutorial Misconduct

Cusamano's claim that the prosecutor engaged in misconduct because she suborned perjury is meritless.  Based on claimed inconsistencies in Benselam's trial testimony, the L.P.I.R. report, and prior testimony, Cusamano argues that there must have been perjury.  (Objections at 14–17.)  The presence of these inconsistencies does not prove either that (1) Bensalem's testimony constituted perjury, or (2) that the prosecution obtained Cusamano's conviction "by the knowing use of perjured testimony."  See Agurs,

---

[6] Cusamano objects to his inability at trial to introduce inconsistencies between Fatah Bensalem's testimony and the L.P.I.R.  Primarily, that the L.P.I.R. report stated that Cusamano stole twelve shirts but at trial Bensalem stated that Cusamano only stole ten shirts.  (See Objections at 11.)  Additionally, Cusamano sought to introduce the fact that the L.P.I.R. report did not mention that any 'struggle' occurred between Bensalem and himself but Bensalem's testimony was to the contrary.  (See id.) The jury had to pass on Bensalem's credibility.  There may have been inconsistencies, but they were minor in light of the evidence of guilt.

9

427 U.S. at 103.  Moreover, other than attempting to apply a label to the inconsistencies, Cusamano cites no legal authority or facts to support his argument that the prosecution's conduct deprived him of a fair trial.  (See R&R 40–45.)

Cusamano also claims that Bensalem committed perjury when he claimed that Cusamano 'scoped' the store.  (Objections p. 19).  In support of this claim, Cusamano points out that this testimony helped solidify the State's charge of burglary by supporting the 'knowing and unlawful entry' element of the crime.  Id.  Cusamano provides no facts that suggest that he did not "scope" out the store.  Conclusory and unsupported claims are insufficient to overcome AEDPA deference.  See Crosby v. New York State, 2010 U.S. Dist. LEXIS 17892 (E.D.N.Y. 2010).

Cusamano's contention that the prosecutor's summation was improper, insofar as she misrepresented Bensalem's trial testimony, is without merit.  While "[a] prosecutor's improper summations results in a denial of due process when the improper statements cause substantial prejudice to the defendant," United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981), a "prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation."  United States v. Rivera, 971 F.2d 876 (2d Cir. 1992).  During the summation, the prosecutor commented that when Bensalem witnessed Cusamano removing the security tags he "basically had his head in the dressing room" while in fact Bensalem was actually "three or four feet" away from the dressing room.  (Tr. B at 43-44, 94-95, 263-264).  This comment was a "colorful" description of how easy it was for Bensalem to see the Defendant.  Therefore, the remark was not improper and did not deny the defendant due process.

### vii. Amendment of the Indictment

Cusamano claims that the prosecution constructively amended the indictment when the prosecution presented evidence at trial that varied from the evidence presented at the grand jury proceeding. Cusamano argues that the prosecution's evidentiary variances included: (1) Bensalem's testimony before the grand jury that he witnessed Cusamano through the "cracks" in the fitting room door differed from his testimony at trial that he witnessed Cusamano through the space under the fitting room door, and (2) Bensalem's testimony at trial that Cusamano "scoped" the store before the crime was the first time such evidence was presented. (See R&R 23–24.) This claim is not federally cognizable because the Fifth Amendment's prohibition against constructive indictments only applies to federal prosecutions, not to Cusamano's prosecution in state court. See LanFranco v. Murray, 313 F.3d 112, 118 (2d Cir. 2002) (citing Branzburg v. Hayes, 408 U.S. 665, 688 n. 25 (1972).

In any event, these slight factual variances did not constructively amend the indictment. See United States v. Clemente, 22 F.3d 477, 482 (2d Cir. 1994) ("A constructive amendment of an indictment occurs when the presentation of evidence and jury instructions modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury.").[7]

---

[7] The indictment was sufficient because it charged Cusamano with burglary and it provided the elements of that offense—that he knowingly entered the store unlawfully with intent to commit a crime therein. See N.Y. PENAL L. § 140.20; see De Vonish v. Keane, 19 F.3d 107, 108 (2d Cir. 1994) ("An indictment is sufficient when it charges a crime (1) with sufficient precision to inform the defendant of the charges he must meet and (2) with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events.").

### viii. Denial of Discovery

Cusamano was not entitled to an expert examination of the burglary tools he used to commit the crimes or an expert handwriting analysis of the trespassing agreement he signed in 1998 in which he agreed not to return to the Eddie Bauer store where his crimes took place.[8]  Where the prosecution must disclose exculpatory evidence known to the prosecution or in its possession, Brady v. Maryland, 373 U.S. 83, 87 (1963), Cusamano does not have a constitutional right to discovery of exculpatory evidence in the circumstances here, see Weatherford v. Bursey, 429 U.S. 545, 559 (1977).  Here, neither an expert examination of the burglary tools nor an expert handwriting analysis of Cusamano's signature on the 1998 agreement existed.  Cusmano did not have a constitutional right to have such tests conducted nor was the prosecution mandated to produce such evidence because no such test was conducted.

### ix. Ineffective Assistance of Counsel

Cusamano contends that his arraignment attorney's failure to challenge the validity of the 1998 trespassing agreement amounted to ineffective assistance of counsel.  There is no merit to this claim.  In order to prevail on a claim of ineffective assistance of counsel, petitioner must establish that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness," and there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See Strickland v. Washington, 466 U.S. 668, 688 (1984).  Counsel does not fall below an objective standard of reasonableness by failing to bring claims that have been determined to be meritless.  See U.S. v. Arena, 180 F.3d 389, 396

---

[8] Cusamano signed this trespassing agreement in 1998 after he was caught shoplifting clothing from the same Eddie Bauer store where the crimes that are the subject of this Order took place.  (See Transcript 11/05/03 at 28–30.)

12

(2d Cir. 1999). Cusamano claims that his counsel was ineffective when he failed to contest the validity of the 5-1/2 year old trespassing agreement, a claim previously held to be meritless. Therefore, Cusamano's arraignment attorney did not fall below an objective standard of reasonableness and was therefore not ineffective.

### x. Alleged Judicial Bias[9]

Cusamano's claims of judicial bias by both the pretrial court and the trial court are premised on: (1) the pretrial judge's alleged failure to rule on motions he submitted to the court, (2) various adverse rulings against him,[10] and (3) self-perceived instances of impatience and dissatisfaction that the pretrial judge and the trial judge exhibited towards him. (See Objections at 29–33.) First, Cusamano failed to state which motions the pretrial court failed to rule on. Second, adverse rulings alone are generally insufficient basis for a claim of judicial bias and "can only in the rarest circumstances evidence the degree of favoritism or antagonism required"—circumstances that are not present here. See Liteky v. United States, 510 U.S. 540, 555 (1994). Finally, Cusamano's claims premised on, what he refers to as "demeaning and belittling comments," are without merit. (Id. at 30.) As the pretrial transcript indicates, any annoyance or impatience that the pretrial judge exhibited towards Cusamano was justified because Cusamano persistently interrupted the court. (See Pre-Trial Hearings Transcript, dated August 14, 2003 at 2, 5–6,11,14.) Mere annoyance or impatience does not support Cusamano's

---

[9] Petitioner also asks the Court to reconsider the Court's denial of his application to amend his habeas petition so that he can present a factual claim that supports his objection regarding judicial bias. As stated in the Court's ruling filed on 1/07/08 Petitioner's claim is (1) time barred and (2) purely speculative and would be futile.

[10] The adverse rulings that Cusamano refers to are (1) the trial court's refusal to hear his argument that the limitations period under N.Y.C.P.L.R. § 214 applies and not the limitations period under N.Y. CRIM. PROC. L. § 30.10(2)(b); (2) the trial court's ruling that the L.P.I.R. report was not admissible under N.Y.C.P.L.R. § 4518; these rulings cannot support a claim for bias because the Court agrees both rulings were correct, supra; and (3) a litany of other rulings by the pretrial court that are not probative of judicial bias. (See Objections at 29–33.)

claim of an identifiable bias. See Francolino v. Kuhlman, 365 F.3d 137, 143 (2d Cir. 2004).

## CONCLUSION

For the foregoing reasons, Cusamano's petition for a writ of habeas corpus is DENIED with prejudice and the Respondent's motion to dismiss Cusamano's petition is GRANTED. As Cusamano has not made a substantial showing of a denial of a federal right, appellate review is not warranted. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to enter judgment accordingly.

Dated: New York, New York
   July 1, 2010

SO ORDERED

*Paul A. Crotty*

PAUL A. CROTTY
United States District Judge


Copies Mailed To:

Mr. Anthony Cusamano
349-09-07451
A.M.K.C.
18-18 Hazen Street
East Elmhurst, New York  11370

Copies Sent By Email:

Frederick Hongyee Wen, Esq.
Attorney General of the State of New York
120 Broadway
New York, New York  10271
Fred.Wen@ag.ny.gov

Magistrate Judge Theodore H. Katz